UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00025-TBR

WILLIAM T. WINCHESTER, Plaintiff

v.

WAL-MART STORES INC., Defendants
SAM'S EAST, INC. d/b/a SAM'S CLUB

**MEMORANDUM OPINION**

This matter is before the Court upon multiple competing motions for summary judgment. Plaintiff has filed two motions for partial summary judgment. (DN 27, 30). Defendant has responded. (DN 35, 43). Plaintiff has replied. (DN 39, 46). Defendant has filed a sur-reply. (DN 51). Defendant has also moved for summary judgment. (DN 38). Plaintiff has responded. (DN 47). Defendant has replied. (DN 82). For the following reasons, Plaintiff's motions for partial summary judgment are DENIED and Defendants' motion for summary judgment is GRANTED.

BACKGROUND

This matter arises out of the employment of Plaintiff William T. Winchester at Defendant Wal-Mart Stores Inc. and Sam's East, Inc. (collectively, "Sam's Club"). Winchester claims Sam's Club violated the Age Discrimination in Employment Act ("ADEA"), discriminated against him on the basis of religion, and retaliated against and wrongfully discharged him. (Docket #7).

Winchester was hired as a full-time Rotisserie Associate at Sam's Club in July, 2012. Approximately three months later Winchester applied for a Team Lead position in

the rotisserie/deli department. Sam's Club eventually hired Louie Shales, a former Wal-Mart employee with thirteen years of experience, as Team Lead. Winchester believes that Shales was hired because Shales (42) was younger than Winchester (50). Winchester notes that Shales worked for Wal-Mart, not Sam's Club, and therefore did not have "Sam's Club" experience. Winchester also criticized the interview process for asking "5 subjective questions, none of which involved knowledge of the Rotisserie, Deli, or HMS operations." (DN 7). Winchester also claims he "observed older persons to be hired into more laborious and lower pay level positions, while younger persons have been hired into higher pay level positions." (DN 7).

In February, 2013, Winchester was informed by Doug Mohr, the assistant manager, that there would be one full-time and two part-time Home Meal Solutions ("HMS") positions available. The following month, Mohr informed Winchester that only two part-time HMS positions would be offered, with an hourly wage of $9.50 and a workload of 60 hours per every two weeks. Winchester told Mohr he was not interested. Sam's Club subsequently hired a woman at $10.50 per hour who worked 64 hours per every two weeks. Winchester claims if his "pay would have been $10.50 per hour with the same hours, after doing the math, Winchester would have continued the application process for that position." (DN 7). Winchester also claims that the second part-time employee hired started at $9.50 per hour, with the only difference being he was a male and over forty.

On June 21, 2013, Winchester filed an intake questionnaire with the EEOC. (DN 7-1). Winchester subsequently filed an EEOC complaint alleging Sam's Club hired Shales due to his age and that Winchester had been discriminated against. (DN 5-2).

2

Winchester claims he suffered several adverse employment actions after he filed his EEOC complaint. Winchester claims his subsequent evaluation was lowered, although he was still rated as a "solid performer" in four out of five areas and "exceeds expectations" on the fifth. (DN 38-2). Winchester also claims that Shales required him to perform additional work, spread "lies about Winchester and instigat[ed] problems." (DN 7). Winchester also claims that after he left a cart of outdated chickens unattended, he returned to find that a "knife was sticking straight out of the breast of the chicken." (DN 7). Another time Winchester found a knife in a cooler "[w]here I would put my hands." (DN 36-1). "And it stayed -- I didn't move it and it stayed there for over two weeks," even though Winchester claims a supervisor conducting a walk-through inspection should have discovered it. (DN 43-1). Winchester also claims that his supervisors attempted to reduce his work hours and alter his schedule, though Winchester admits that he never actually worked less hours and his schedule was only pushed back by one hour.

On July 20, 2013, Winchester applied for a position called Member Champion. The Member Champion position required work on Sundays. Winchester, a Christian who belongs to the Salvation Army, was never scheduled by Sam's Club to work on Sundays. Winchester interviewed for the position, but when he informed the interviewers that he was unavailable to work on Sundays they stopped the interview. On October 26, 2013, Winchester filed his second complaint with the EEOC claiming he had been discriminated against on the basis of his religion. (DN 5-3).

In the summer of 2014, Winchester was offered and accepted an accounting position with the Salvation Army, a job which paid approximately $3 per hour more than

Winchester earned at Sam's Club. In late June, 2014, Winchester gave Sam's Club two-week notice that he was leaving. (DN 36-1). Winchester intended that his final day of employment be July 9, 2014. (DN 30). On July 7, 2014, he arrived to find his "work area was unkempt and unsanitary" and the "chicken cooking schedule had not been adhered and no chickens were in the cooking ovens nor rodded and ready to be cooked," placing Winchester two hours behind schedule. (DN 30). Winchester states that "after enduring the above stated actions as long as possible, I took off my work apron and meat jacket, through (sic) them on the floor, and stated that I was 'through with this.'" (DN 30).

Winchester filed this action claiming disparate treatment, disparate impact, discrimination based on religion, retaliation, and wrongful discharge. (DN 7). The Court previously dismissed Winchester's disparate impact claim. (DN 16). Currently before the Court are the parties competing motions for summary judgment on Winchester's remaining claims.

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.*

4

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

## DISCUSSION

Winchester has asserted five claims against Sam's Club: (1) disparate treatment; (2) disparate impact; (3) discrimination based on religion; (4) retaliation; and (5) wrongful discharge. (DN 7). This Court previously granted Sam's Club's motion to dismiss Winchester's disparate impact claim. (DN 16). The Court will address Winchester's claims for (I) wrongful discharge, (II) disparate treatment, and (III) retaliation, before turning to Winchester's claim for (IV) religious discrimination.

### I.  Wrongful Discharge.

Winchester claims Sam's Club wrongfully discharged him "vis-a-vis a constructive discharge" in violation of Kentucky state law. (DN 7).

The "commonly accepted standard" for a constructive discharge claim "is whether, based upon objective criteria, the conditions created by the employer's action are so intolerable that a reasonable person would feel compelled to resign." *Com., Tourism Cabinet v. Stosberg*, 948 S.W.2d 425, 427 (Ky. Ct. App. 1997); *see also Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990).

In the summer of 2014, Winchester accepted an accounting position with the local Salvation Army. (DN 30). This position paid approximately $3 an hour more than Winchester was earning at Sam's Club. (DN 36-1, p. 41). In late June, 2014, Winchester gave Sam's Club two-week notice that he was quitting. (DN 36-1). Winchester intended that his final day of employment be July 9, 2014. (DN 30). On July 7, 2014, he arrived to find his "work area was unkempt and unsanitary" and the "chicken cooking schedule had not been adhered and no chickens were in the cooking ovens nor rodded and ready to be cooked," placing Winchester two hours behind schedule. (DN 30). Winchester states that "after enduring the above stated actions as long as possible, I took off my work apron and meat jacket, through them on the floor, and stated that I was 'through with this.'" (DN 30).

As an initial matter, the Court notes that Winchester is only claiming he was constructively discharged for the final two days of his employment. (DN 30-3) ("Even though Plaintiffs constructive discharge occurred 2 days prior to his intended last day to work due to his 2 weeks notice, it was a constructive discharge nonetheless"). Winchester admitted he voluntarily resigned to accept a position with the Salvation Army and that his resignation was involuntary only "[t]o the extent that I didn't work out my notice because of the working conditions." (DN 43-1, p. 30).

The Court finds that arriving to an unclean work station and having to perform additional work to catch up[1] does not constitute objective conditions which are "so

---

[1] In his brief, Winchester repeats many of the facts supporting his retaliation claim as also supporting his constructive discharge claim. The Court finds these have little weight, as many instances cited by Winchester occurred in 2013, well before Winchester voluntarily decided to accept new employment in the summer of 2014.

6

intolerable that a reasonable person would feel compelled to resign." *Stosberg*, 948 S.W.2d at 427. Co-workers are a common source of workplace frustration, and poorly performing co-workers generally do not create a claim for constructive discharge. Similarly, an increase in duties is generally expected in most employment settings. For instance, in *Crockett*, the defendant CHA Health assigned Norma Crockett an increased number of territories to cover in her role as a Provider Relations Representative. *Crockett v. CHA HMO, Inc.*, 2008 Ky. App. LEXIS 103 *7 (Ky. Ct. App. 2008) (unpublished). Crockett resigned after searching for and finding new, higher-paying employment. She subsequently claimed she had been constructively discharged. The Kentucky Court of Appeals concluded that "[e]ven taking her allegations that she was underpaid and overworked as true, it strains reason to conclude, based on the record before us, that her situation was so intolerable that no reasonable person would have remained." *Id*. at *7. Employees must tolerate reasonable working conditions; conditions which include honest mistakes by employers and common frustrations by fellow employees. *See e.g. Relford v. Lexington-Fayette Urban*, 2003 Ky. App. Unpub. LEXIS 908 (Ky. Ct. App. 2003) (unpublished) (holding employee who was twice improperly drug tested due to a "poorly drafted drug policy" and resigned over fear of being fired was not constructively discharged ). The Court finds that Winchester has failed to present facts which would support a claim for constructive discharge.

    **II.**    **Disparate Treatment.**

Winchester also claims he was discriminated against and suffered disparate treatment on the basis of his age.

If a plaintiff makes a discrimination claim based on circumstantial evidence, the Court will apply the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden to establish a *prima facie* case. In an age discrimination case, the plaintiff must show (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) the position went to a younger worker. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004).[2] If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). If defendant does so, then the plaintiff must be given an opportunity to prove that defendant's stated reason "was in fact pretext." *Id*. at 804.

Winchester claims he was discriminated against on the basis of age when he applied for Team Lead position for "Rotisserie/Deli/HMS." (DN 7-1). The Court finds that Winchester has made out a *prima facie* case. It is undisputed that Winchester was over forty and therefore a member of a protected class. He suffered an adverse employment action in not being promoted. Although Sam's Club contests that Winchester was unqualified for the position, at this stage the Court accepts Winchester's argument that he was qualified for the Team Lead position. Finally, the position went to Louis Shales (age 42), who is approximately eight years younger than Winchester (age 50). Although Shales is also a member of a protected class, the relevant inquiry is

---

[2] "In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals." Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002).

whether he was "substantially younger" than Winchester. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class").

Since Winchester has established a *prima facie* case of discrimination, the burden shifts to Sam's Club to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Sam's Club states Winchester was not hired because "Winchester was not the best qualified candidate for the Team Lead position, having had no Sam's Club or Wal-Mart management experience." (DN 38). When he applied for the Team Lead position Winchester had been employed at Sam's Club for approximately three months. Comparatively, Shales had worked for Wal-Mart for approximately thirteen years before working for Sam's Club. The Court finds that Sam's Club's explanation satisfies its burden to articulate a nondiscriminatory reason for why Winchester was not promoted.[3]

Once a defendant has met their burden, "the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "A plaintiff may

---

[3] The Supreme Court has specifically rejected a requirement that employers "*prove absence of discriminatory motive*" and affirmed that employers need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection." (emphasis in original) *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 (1978) (citation omitted). "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).

demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action." *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007) *abrogated by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors" including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000).

Winchester argues Sam's Club's stated reason for hiring Shales has no basis in fact. This "type of showing is easily recognizable and consists of evidence that the proffered bases" is "factually false." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). In this case, Winchester claims Shales was not more qualified because Shales was "terminated" from Wal-Mart. (DN 47). Winchester also claims the interview process consisted of questions which were "purely subjective" and did not test "knowledge of the job or operations, previous experience in similar jobs, or past leadership and supervisory experiences." (DN 47). Winchester argues Sam's Club has "offered no proof that the person hired, Louis Shales, was more qualified than Plaintiff for the position." (DN 47).

The Court finds that Winchester mistakenly places the burden of proof on Sam's Club. An employee who claims an employer's stated reason for not promoting him is pretext has the burden of establishing either (1) the employer had a pattern of discrimination and the applicant was "as qualified or marginally more qualified" than the person promoted; or (2) if there is "little or no other probative evidence of discrimination," that his qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006). Winchester has offered no proof that he was significantly more qualified, let alone as qualified, as Shales, and it strains plausibility to believe that an employee with three months of experience would be as qualified for a position as an employee with thirteen years of experience, regardless of why the latter was terminated. Furthermore, Sam's Club's use of subjective questions in its hiring process is within its discretion. As a general rule, "an employer is free to choose among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("An employer has even greater flexibility in choosing a management-level employee, as is the case here, because of the nature of such a position"). The Court finds that Winchester has failed to show that Sam's Club's stated reason for promoting Shales was pretext. Accordingly, the Court finds that summary judgment in favor of Sam's Club is appropriate on this claim.

### III. Retaliation.

Winchester claims he was retaliated against after filing two Charges of Discrimination with the EEOC. Winchester filed an intake questionnaire with the EEOC

on June 21, 2013. (DN 7-1). Winchester signed his first EEOC complaint on August 20, 2013 (DN 5-2) and his second on October 26, 2013 (DN 5-3).

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action." *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997). If the plaintiff establishes a *prima facie* case, the employer must then offer a legitimate, nondiscriminatory reason for its action. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the employer satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Id*; *Penny*, 128 F.3d at 417 ("The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination").

Winchester easily meets the first element of a *prima facie* case. Winchester engaged in a protective activity in filing his two EEOC claims. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). The next question is whether Winchester suffered an adverse employment action. "[A]n adverse employment action is defined as a 'materially adverse change in the terms or conditions' of employment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (*quoting Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "An adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id*. (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). It must be "more disruptive than a mere inconvenience or an alteration

of job responsibilities." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (citation omitted). "'Trivial episodes of unpleasantness or admonition, or other *de minimis* employment actions, standing alone, cannot supply legally sufficient evidence of actionable material discipline or retaliation, even if they were arguably impelled by protected activity.'" *Campbell v. Norfolk S. Corp.*, 876 F. Supp. 2d 967, 983 (N.D. Ohio 2012) (*quoting Kelly v. Lambda Research, Inc.*, 89 Fed.Appx. 535, 545 (6th Cir.2004).

Winchester has provided a laundry list of items he believes constitutes adverse employment actions: (1) "lower annual evaluation thus lowering Plaintiff's annual pay raise;" (2) "doubling Plaintiff's work load;" (3) supervisory personnel "instigating problems for Plaintiff through other employees;" (4) "veiled threats with knives being placed in threatening manners in Plaintiff's work areas;" (5) "isolating Plaintiff from other employees;" (6) "supervisory personnel plotting with each other with management's knowledge in or to set Plaintiff up for unfounded charges;" (7) "reducing Plaintiff's scheduled work hours;" and (8) "constantly changing Plaintiff's work times to hours inappropriate for Plaintiff's position and then having supervisory personnel attempt to coerce Plaintiff into leaving early." (DN 47).

Winchester's first complaint is that a lower evaluation affected his pay. In his July, 2013 evaluation, Winchester was rated as a "solid performer" in four out of five areas and "exceeds expectations" on the fifth. (DN 38-2). Winchester claims that this evaluation was "down from the previous evaluation" and he "would've gotten me a higher pay raise than this one." (DN 38-2). However, an employee is not entitled to the highest possible evaluation or raise. "Satisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment

action where the employee receives a merit raise." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Moreover, Winchester admitted he had no reason to believe this evaluation was related to his age. (DN 38-2).

Winchester's second complaint is that Shales required him to "start rodding two days worth of chickens on the day before Winchester's day off, which doubled Winchester's workload." (DN 7). Winchester has provided no evidence that this increased duty resulted in a material change in his work conditions. *Verges v. Shelby Cty. Sheriff's Office*, 721 F. Supp. 2d 730, 740 (W.D. Tenn. 2010) (holding plaintiff's bare claim that she was given "additional clerical duties" after requesting a transfer was insufficient to state an adverse employment action). The Court also finds that, to the extent this constituted a change in working conditions, that change was *de minimis*.

Winchester's third, fourth, fifth, and sixth complaints are that his supervisors instigated problems with co-workers, made veiled threats with "knives placed in threatening manners," isolated him, and plotted to "set Plaintiff up for unfounded charges." (DN 47). None of these claims demonstrate a change in employment status, title, salary, or benefits which constitute an adverse employment action. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007); *Burlington*, 524 U.S. at 762 (holding that "in most cases" an adverse employment action is one that "inflicts direct economic harm"). A change in working conditions which does not include a significant increase in work or decrease in responsibilities does not constitute an adverse employment action. *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir. 1996) ("reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183

14

(6th Cir. 2004) ("the reduction in Mitchell's lab space—from 2000 square feet to 150 square feet—did not amount to an adverse employment action"). Furthermore, although Winchester speculates about his supervisors plotting against him, he has not pointed to any actual harm suffered. The "Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) ("A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action") (citation omitted). Winchester's claims are mere speculation not corroborated by any evidence.

Winchester's seventh and eighth claims are that his hours were reduced and his scheduled was changed in an attempt to get him to leave early. However, Winchester admits that although he was sometimes *scheduled* for less than full hours, he nevertheless still worked full-time.

>  [Winchester]: And then that's about the time when my hours on the schedule started getting reduced to sometimes 16 to 20 hours a week. Although Doug said to continue to work. Come in at a certain time and leave at a certain time.
>
> Q. And you told me earlier that in terms of your actual work hours they were not, in fact, cut ever, correct?
>
> A. I mean, not to the extent that they were posted on the schedule, correct.
>
> Q. And you did, in fact, continue to work full-time hours and continued to be classified as a full-time employee, right?
>
> A. Correct.

15

Similarly, although Winchester's claims his shifts were altered, he did not suffer any adverse employment action. Winchester claims that after he filed his EEOC complaint, his "scheduled hours, which Doug told me to follow at that time, changed from 12:00 to 8:30, which is when the standard rotisserie position is, to 1:00 to 9:30 or 1:30 to 10:00 and stuff like that which made no sense at all." (DN 38-2, p. 85). Winchester claims that after the store closed at 8:30, "various members of management came in and come up to me and said why don't you go on home." (DN 38-2, p. 86). However, Winchester never actually left early, nor was he disciplined for failing to leave early.

> Q. But you didn't [leave early], right?
>
> A. That's correct.
>
> Q. And you never got written up for not leaving, right?
>
> A. That's correct.
>
> Q. In fact, you got paid for all of those hours you worked, right?
>
> A. That's correct.
>
> . . .
>
> Q. Did you ever talk to him about why you were being scheduled or requested to stay until 9:30 or 10:00?
>
> A. Well, every week when the new schedule came out for the third week, I'd say it's – he said just work the schedule. I said okay.
>
> Q. Okay. My question was did you ever ask Doug why that was?
>
> A. Why? No.

Neither of these claims show the type of "'materially adverse change in the terms or conditions' of employment" required to constitute an adverse employment action.

16

*Laster*, 746 F.3d at 727; *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 482 (6th Cir. 2012) (holding it was not an adverse employment action where "the only change is that the schedule has been shifted one hour later"). To the extent Winchester suffered any change in working conditions, that change was *de minimis*.

## IV. Religious Discrimination.

Winchester's final claim is that he was discriminated based on his religion. Winchester was a member of Twelve Oaks Baptist Church when he first started working for Sam's Club. In the summer of 2013 Winchester joined the Salvation Army. (DN 36-1, p. 4). Winchester states that Captain Crawford at the Salvation Army encourages members to take one day off for spiritual reflection, though this can be any day of the week. (DN 36-1, p. 8). Winchester claims it is his "own personal Christian belief" that work on Sundays is improper. (DN 36-1, p. 9).

Winchester informed Sam's Club that he was unable to work on Sundays due to his religious beliefs. Winchester was never required to work on Sundays, nor was he disciplined for being unavailable on Sundays. (DN 36-1, p. 16). Winchester's religious discrimination claim stems from his application for the Member Champion position. During Winchester's interview for this position, Winchester was informed that "the hours for the Member Champion position, which she said was 'set by corporate,' requires the person to work every Sunday." (DN 27). After Winchester informed the interviewers of his religious objection to working on Sundays, the interview was terminated.

An employee "bears the burden of establishing a prima facie case" of religious discrimination and "sustains that burden by showing that he holds a sincere religious belief that conflicts with an employment requirement; that he has informed his employer

17

of the conflict; and that he was discharged or disciplined for failing to comply with the conflicting requirement." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994). "Once a prima facie case is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship." *Id*. "To require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship." *Id*.

Sam's Club has stated the Member Champion position, of which there is only one in the store, requires that employee be available to work on Sundays.[4] The Supreme Court has previously held that if an employer requires work on specific days, it is an undue hardship on that employer to require them to hire complementary employees or juggle other employee's schedules to accommodate one employee's religious beliefs. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) ("to require TWA to bear additional costs when no such costs are incurred to give other employees the days off that they want would involve unequal treatment of employees on the basis of their religion"). The Sixth Circuit has reached the same conclusion. *Cooper*, 15 F.3d at 1380 ("Either alternative available to Oak, the hiring of an additional worker or risking the loss of production, would have entailed more than a *de minimis* cost, relieving Oak of the obligation to accommodate"); *see also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982). Winchester has not proposed an accommodation, let alone one which would not require Sam's Club to hire an additional employee or rearrange other employees' schedules in favor of Winchester's religious beliefs. Accordingly,

---

[4] Winchester also claims he inquired about a meat cutter position but did not apply when he was told it required work on Sundays.

18

Winchester cannot maintain a claim for religious discrimination against Sam's Club because it would impose an undue burden upon Sam's Club.

## CONCLUSION

IT IS HEREBY ORDERED Plaintiff's motions for partial summary judgment (DN 27, 30) are DENIED. Defendants' motion for summary judgment (DN 38) is GRANTED.

A separate judgment and order will issue.


cc:     counsel of record

       William T. Winchester
       P.O. Box 643
       Paducah, KY 42002